IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,254

In the Matter of JOHN M. KNOX,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed January 11, 2019. Disbarment.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause, and was on the formal complaint for the petitioner.

No appearance by respondent.

PER CURIAM: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, John M. Knox, of Lenexa, an attorney admitted to the practice of law in Kansas in 1994.

On October 4, 2017, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent failed to file an answer. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on March 22, 2018, at which the respondent did not appear. The hearing panel determined that respondent violated KRPC 1.1 (2018 Kan. S. Ct. R. 289) (competence); 1.3 (2018 Kan. S. Ct. R. 292) (diligence); 1.4(a) (2018 Kan. S. Ct. R. 293) (communication); 1.5(d) (2018 Kan. S. Ct. R. 294) (fees); 3.2 (2018 Kan. S. Ct. R. 343) (expediting litigation); 4.1(a) (2018 Kan. S. Ct. R. 355) (truthfulness in statements to others); 8.4(c) (2018 Kan. S. Ct. R. 381) (engaging in conduct involving dishonesty, fraud, deceit, or

1

misrepresentation); 8.4(d) (2018 Kan. S. Ct. R. 381) (engaging in conduct prejudicial to the administration of justice); 8.4(g) (2018 Kan. S. Ct. R. 381) (engaging in conduct adversely reflecting on lawyer's fitness to practice law); and Kansas Supreme Court Rule 207(b) (2018 Kan. S. Ct. R. 246) (failure to cooperate in disciplinary action).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"9.     On June 19, 2013, W.D. was involved in a two-car automobile accident in Baldwin City, Kansas. The driver of the other car failed to stop at a stop sign and collided with W.D.'s car. Both drivers were insured. W.D. suffered injuries to his hip, back, and shoulder. In the fall of 2013, W.D. underwent laminectomy surgery (a surgical operation to remove the back of vertebrae to relieve pressure on nerves). An MRI had shown that five of W.D.'s vertebrae were pinching against his spinal cord.

"10.    W.D. was advised by his insurance company to seek legal counsel. W.D. and his wife, K.D., met with and hired the respondent in June or July of 2013, shortly after the accident.

"11.    The respondent proposed a contingent fee arrangement in which the respondent would receive 30% of any recovery. W.D. and K.D. agreed to the fee proposed by the respondent. The respondent failed to reduce the agreement to writing.

"12.    W.D. and K.D. again met with respondent at the respondent's office in Lawrence. At that time, W.D. provided the respondent with his medical records. The respondent advised W.D. and K.D. that he was submitting information to an insurance company.

2

"13.    Throughout the representation, W.D. and K.D. had a difficult time communicating with respondent.

"14.    In the spring of 2014, W.D. spoke with the respondent by telephone. The respondent explained that he had not maintained communication because the respondent's wife had been ill. The respondent, however, assured W.D. that everything was fine with the case.

"15.    Thereafter, W.D. and K.D. were unable to reach the respondent. They were aware that a deadline existed in the case and they increased their attempts to contact the respondent. W.D. and K.D. believed that the respondent had filed a civil case on behalf of W.D. by this time.

"16.    The respondent failed to inform W.D. that he moved his office to another location. On his own, W.D. learned that the respondent had moved his office to 810 Pennsylvania, Lawrence.

"W.D. or K.D. called the respondent weekly, but were not able to make contact with him. At some point, the respondent's voicemail box was full.

"During the fall of 2015, they left notes on the door of the respondent's office because when they would attempt to locate him in his office, he was never present. They contacted the manager of the building where the respondent's office was located, but they were not able to obtain information on how to get in touch with the respondent.

"17.    In February 2016, W.D. and K.D. sent a letter to the respondent *via* certified mail, return receipt requested. The letter eventually came back as unclaimed because it was not picked up by the respondent.

"18.    On March 11, 2016, W.D. filed a complaint with the disciplinary administrator's office. Leslie Miller of the Douglas County Ethics and Grievance Committee was assigned to investigate the complaint.

3

"19.     On March 14, 2016, the disciplinary administrator notified the respondent by letter that W.D.'s complaint had been docketed for investigation. The disciplinary administrator directed the respondent to provide a written response to the complaint within 20 days. The respondent did not provide a written response to the complaint.

"20.     Ms. Miller sent letters to the respondent on March 21, 2016, May 11, 2016, and June 6, 2016, directing the respondent to provide a written response to W.D.'s complaint. The respondent did not provide a written response to the complaint filed by W.D.

"21.     In June 2016, Special Investigator William Delaney contacted the respondent at his home. The respondent claimed that he had not received the complaint, but that he would respond. While the respondent provided Mr. Delaney with W.D.'s client file, respondent never provided a response to the complaint.

"22.     During the investigation, Ms. Miller checked the Douglas County court records and determined that two civil cases had been filed by the respondent on behalf of W.D., cases numbered 2015-V-000457 and 2015-V-000458. Both cases were filed on December 21, 2015. The petitions in the two cases were identical and filing fees had been paid by the respondent in both cases. Both cases were filed outside of the two-year statute of limitations.

"23.     In 2015-V-000457, after counsel for the defendant filed a motion to dismiss the case based on the statute of limitations, on May 11, 2016, the court dismissed the case with prejudice. In 2015-V-000458, the court dismissed the case for lack of prosecution on December 22, 2016.

"24.     Robert Luder represented the defendant in the personal injury cases. Mr. Luder advised Ms. Miller that the respondent told him that he had filed the case within the statute of limitations but that there was a glitch in the clerk's office with respect to the filing.

"25.     On May 24, 2016, Ms. Miller met with W.D. and K.D. During that meeting, W.D. and K.D. asked Ms. Miller about the status of the case. Ms. Miller told W.D. and K.D. that the case had been filed approximately six months too late and that it had been dismissed on May 11, 2016. According to Ms. Miller, W.D. and K.D. were shocked and upset that the case had been dismissed.

"26.     During the time that the respondent represented W.D., the respondent did not have malpractice insurance.

"On December 23, 2016, the Supreme Court issued an opinion suspending the respondent's license to practice law for a period of one year. *In re Knox*, 305 Kan. 628, 385 P.3d 500 (2016). The respondent's license remains suspended.

"27.     On October 4, 2017, Mr. Hazlett filed the formal complaint in this case. That same day, the formal complaint and the notice of hearing were sent to the respondent at his last registration address by certified mail. Additionally, a copy of the formal complaint and notice of hearing were sent to the respondent at his last registration address and his home address by regular mail. The respondent failed to file an answer to the formal complaint. Later, on November 30, 2017, William C. Delaney, Special Investigator with the disciplinary administrator's office served a copy of the formal complaint and notice of hearing on the respondent's wife at the respondent's home address, notifying the respondent that a hearing on the formal complaint was scheduled for January 11, 2018.

"28.     Because of inclement weather, Chief Justice Nuss closed the judicial branch on January 11, 2018, and the hearing on the formal complaint was continued.

"29.     After the case was rescheduled, the disciplinary administrator's office sent a copy of the new notice of hearing, *via* certified mail to the respondent at his last registration address, notifying him that the case had been continued to March 22, 2018. Mr. Hazlett also sent a copy of the notice of hearing to the respondent at his home address. The respondent did not appear at the hearing on the formal complaint.

5

"*Conclusions of Law*

"30.     It is appropriate to consider violations not specifically included in the formal complaint under certain circumstances. The law in this regard was thoroughly examined in *State v. Caenen*, 235 Kan. 451, 681 P.2d 639 (1984), as follows:

'Supreme Court Rule 211(b) (232 Kan. clxvi), requires the formal complaint in a disciplinary proceeding to be sufficiently clear and specific to inform the respondent of the alleged misconduct.

'The seminal decision regarding the applicability of the due process clause to lawyer disciplinary proceedings is found in *In re Ruffalo*, 390 U.S. 544, 88 S. Ct. 1222, 20 L.Ed.2d 117, *reh. denied* 391 U.S. 961, 88 S. Ct. 1833, 20 L. Ed. 2d 874 (1968). There the United States Supreme Court held that a lawyer charged with misconduct in lawyer disciplinary proceedings is entitled to procedural due process, and that due process includes fair notice of the charges sufficient to inform and provide a meaningful opportunity for explanation and defense.

'Decisions subsequent to *Ruffalo* have refined the concept of due process as it applies to lawyer disciplinary hearings, and suggest that the notice to be provided be more in the nature of that provided in civil cases. The weight of authority appears to be that, unlike due process provided in criminal actions, there are no stringent or technical requirements in setting forth allegations or descriptions of alleged offenses. . . . Due process requires only that the charges must be sufficiently clear and specific to inform the attorney of the misconduct charged, but the state is not required to plead specific rules, since it is the factual allegations against which the attorney must defend. . . . However, if specific rules are pled, the state is thereafter limited to such specific offenses. . . .

6

'Subsequent to the *Ruffalo* decision, the due process requirements in lawyer disciplinary proceedings have been given exhaustive treatment by this court. In *State v. Turner*, 217 Kan. 574, 538 P.2d 966 (1975), 87 A.L.R.3d 337, the court summarized prior Kansas and federal precedent on the question, including *Ruffalo*, and held in accordance with established precedent that the state need not set forth in its complaint the specific disciplinary rules allegedly violated . . ., nor is it required to plead specific allegations of misconduct. . . . What is required was simply stated therein:

> We must conclude that where the facts in connection with the charge are clearly set out in the complaint a respondent is put on notice as to what ethical violations may arise therefrom. . . .
>
> . . . .
>
> It is not incumbent on the board to notify the respondent of charges of specific acts of misconduct as long as proper notice is given of the basic factual situation out of which the charges might result.'
> [Citations omitted.] 235 Kan. at 458-59.

Thus, only when the formal complaint alleges facts that would support findings of violations of additional rules, will considering additional violations be allowed. In this case, the disciplinary administrator requested that the hearing panel conclude that the respondent violated Rules 207 (cooperation) and 211(b) (failure to file an answer to the formal complaint). The hearing panel concludes that the disciplinary administrator included sufficient facts in the formal complaint to warrant consideration of a violation of Rule 207 (cooperation). Further, the respondent was not put on notice that the hearing panel would be considering a violation of Rule 211(b) (failure to file an answer to the formal complaint). Thus, the hearing panel concludes that it is proper to consider a violation of Rule 207 but not proper to consider a violation of Rule 211(b).

"31.    The respondent failed to appear at the hearing on the formal complaint. It is appropriate to proceed to hearing when a respondent fails to appear only if proper service was obtained. Rule 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

> '(a)    Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address.
>
> . . . .
>
> '(c)    Service by mailing under subsection (a) or (b) shall be deemed complete upon mailing whether or not the same is actually received.'

In this case, the disciplinary administrator complied with Rule 215(a) by sending a copy of the formal complaint and the notice of hearing that the hearing on the formal complaint would be held January 11, 2018, *via* certified United States mail, postage prepaid, to the address shown on the respondent's most recent registration. Additionally, Mr. Delaney served a copy of the formal complaint and notice of hearing on the respondent's wife at the respondent's residential address. The respondent was served with a copy of the notice of hearing that the hearing on the formal complaint would be held on March 22, 2018, *via* certified United States mail, postage prepaid, to the address shown on the respondent's most recent registration. Finally, the respondent was served with a copy of the notice of hearing that the hearing on the formal complaint would be held March 22, 2018, by regular mail sent to him at his home address. The hearing panel concludes that the respondent was afforded the notice that the Kansas Supreme Court Rules require and more.

"32.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated Rules 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.5 (fees), 3.2 (failure to expedite litigation), 4.1 (false statements), 8.4 (misconduct), and 207 (cooperation) as detailed below.

## "Rule 1.1

"33.     Lawyers must provide competent representation to their clients. Rule 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The respondent failed to utilize the requisite legal knowledge, skill, thoroughness, and preparation in his representation of W.D. Despite being retained in 2013, shortly after the automobile accident, the respondent failed to timely file suit on behalf of W.D. Based on the respondent's lack of competent representation, W.D.'s suit was dismissed because it was filed outside the statute of limitations. The hearing panel concludes that the respondent violated Rule 1.1.

## "Rule 1.3

"34.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* Rule 1.3. The respondent failed to diligently and promptly represent W.D. by failing to timely file suit on behalf of W.D. The respondent filed suit on behalf of W.D. two and one-half years after he was retained. Because the respondent failed to act with reasonable diligence and promptness in representing his client, the hearing panel concludes that the respondent violated Rule 1.3.

## "Rule 1.4

"35.     Rule 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' W.D. and K.D. attempted to contact the respondent on numerous occasions in an attempt to get an update on the status of the case. The respondent failed to return W.D. and K.D.'s telephone messages. The respondent failed to inform W.D. that he moved offices. The respondent failed to pick up certified mail sent by his client which

9

made it impossible to properly communicate with his client. Finally, the respondent failed to notify his client when he filed suit, when a hearing was scheduled, and when the case was dismissed. In this case, the respondent violated Rule 1.4(a) when he failed to keep W.D. and K.D. reasonably informed about the status of the case and when he failed to promptly comply with reasonable requests for information, in violation of Rule 1.4(a).

"Rule 1.5

"36.     Contingent fee agreements must be in writing. Rule 1.5(d) provides the requirement in this regard:

'A fee may be contingent on the outcome of the matter for which the service is rendered . . . . A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, and the litigation and other expenses to be deducted from the recovery. . . .'

The respondent agreed to represent W.D. on a contingent basis. However, the respondent failed to reduce the agreement to writing. Thus, the hearing panel concludes that the respondent violated Rule 1.5(d).

"Rule 3.2

"37.     An attorney violates Rule 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. After the respondent filed suit on behalf of W.D., the respondent took no additional action. Additionally, the respondent failed to respond to the defendant's motion to dismiss and failed to appear in court for a scheduled hearing. Accordingly, the hearing panel concludes that the respondent failed to make reasonable efforts to expedite litigation consistent with W.D.'s interest, in violation of Rule 3.2.

10

"38.     Attorneys are required to be honest in dealings with third persons:  '[i]n the course of representing a client a lawyer shall not knowingly . . . make a false statement of material fact or law to a third person.' Rule 4.1(a). The respondent made a false statement of material fact when he told opposing counsel that he timely filed suit on behalf of W.D. and that there was a 'glitch' in the clerk's office. The hearing panel concludes that the respondent violated Rule 4.1(a) in two respects.

"Rule 8.4(c)

"39.     'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' Rule 8.4(c). The respondent engaged in conduct that involved dishonesty when he failed to disclose to W.D. that he had not timely filed suit on his behalf. The respondent engaged in conduct that involved dishonesty when he assured W.D. that the case was progressing. Finally, the respondent engaged in conduct that involved dishonesty when he falsely told opposing counsel that he timely filed suit on behalf of W.D. but that there was a 'glitch' in the clerk's office. As such, the hearing panel concludes that the respondent violated Rule 8.4(c).

"Rule 8.4(d)

"40.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' Rule 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he failed to timely file suit on behalf of W.D., when he failed to prosecute the case he filed on behalf of W.D., and when he failed to respond to opposing counsel's motion to dismiss. As such, the hearing panel concludes that the respondent violated Rule 8.4(d).

"Rule 8.4(g)

"41.     'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' Rule 8.4(g). The

11

respondent engaged in conduct that adversely reflects on his fitness to practice law when he failed to take simple steps to accomplish the goals of the representation of W.D. The hearing panel concludes that the respondent violated Rule 8.4(g).

"Rule 207(b)

"42.     Lawyers must cooperate in disciplinary investigations. Rule 207(b) provides the requirement in this regard.

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Rule 207(b).

The respondent knew that he was required to forward a written response to the initial complaints—he had been repeatedly instructed to do so in writing by the disciplinary administrator, Ms. Miller, and Mr. Delaney. Because the respondent knowingly failed to provide a written response to the initial complaint filed by W.D., the hearing panel concludes that the respondent violated Rule 207(b).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"43.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"44.     *Duty Violated*. The respondent violated his duty to his client to provide competent and diligent representation and reasonable communication. The respondent

violated his duty to the public to maintain his personal integrity. Additionally, the respondent violated his duty to the legal system to refrain from causing prejudice to the administration of justice. Finally, the respondent violated his duty to the legal profession to cooperate in disciplinary proceedings.

"45.     *Mental State*. The respondent knowingly and intentionally violated his duties.

"46.     *Injury*. As a result of the respondent's misconduct, the respondent caused actual serious injury to his client, to the legal system, and the legal profession. While the total injury to his client is unclear, it is clear that W.D. is responsible for $2,000 of medical bills which should have been paid through the lawsuit. Because W.D. is an older gentleman on a fixed income, he has been paying toward the outstanding bills at a rate of $20 per month. W.D. will continue to pay $20 per month until the financial obligations have been satisfied.

"47.     *Aggravating and Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

a.     Prior Disciplinary Offenses. The respondent has been previously disciplined on four occasions.

1)     On November 29, 2001, the respondent entered into the attorney diversion program for an advertising rule violation.

2)     On July 18, 2006, the disciplinary administrator informally admonished the respondent for having violated Rule 1.3 (diligence), Rule 1.4 (communication), and Rule 3.2 (expediting litigation).

3)     On December 19, 2008, the disciplinary administrator informally admonished the respondent for having violated Rule 1.4 (communication).

13

4) On December 23, 2016, the Supreme Court suspended the respondent's license to practice law for a period of one year for violating Rules 1.3 (diligence), 1.4 (communication), 1.5 (fees), 1.15 (safeguarding property), 1.16 (termination of representation), 8.1 (cooperation), 8.4 (professional misconduct), 207 (cooperation), and 211 (failure to file an answer to the formal complaint).

b. <u>Dishonest or Selfish Motive</u>. The respondent's misconduct was motivated by dishonesty. The respondent failed to inform W.D. that he had not filed the case timely. The respondent falsely told W.D. and K.D. that the case was progressing. The respondent falsely told opposing counsel that the suit had been timely filed and that there was a 'glitch' in the clerk's office. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by dishonesty.

c. <u>A Pattern of Misconduct</u>. Over an extended period of time, the respondent failed to properly communicate with W.D. and K.D. Additionally, much of the misconduct in this case is similar to the misconduct in the three of the four previous disciplinary cases. Thus, the hearing panel concludes that the respondent has engaged in a pattern of misconduct.

d. <u>Multiple Offenses</u>. The respondent violated Rules 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.5 (fees), 3.2 (expediting litigation), 4.1 (truthfulness in statements to others), 8.4 (professional misconduct), and 207 (cooperation). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

e. <u>Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process</u>. The respondent failed to provide a written response to the complaint in this case despite the repeated directions to do so. Additionally, the respondent failed to file an answer and failed to appear at the hearing on this matter. The respondent's

failure to cooperate in this disciplinary proceeding is further aggravated by the respondent's familiarity with the disciplinary process. In the 2016 attorney disciplinary case, the respondent appeared at the hearing and appeared before the Kansas Supreme Court. In that case, the respondent failed to file an answer and was found in violation of Rule 211(b). Moreover, in that case, the Kansas Supreme Court ordered the respondent to reimburse the Client Protection Fund $3,000. To date, the respondent has not done so. The respondent's failure to participate, cooperate, appear, and comply with court orders and rules amounts to bad faith obstruction of the disciplinary proceeding.

f.      Vulnerability of Victim. When W.D., an older gentleman on a fixed income, testified before the hearing panel, his trusting nature was clear. As a result of the underlying accident, W.D. was seriously injured. W.D. trusted the respondent to take appropriate action to ensure that his medical bills were covered by the other driver who was clearly at fault. The respondent violated that trust by failing to take action on behalf of W.D. Accordingly, the hearing panel concludes that because W.D. wholly relied on the respondent to take appropriate action on his behalf, W.D. was vulnerable to the respondent's misconduct.

g.      Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1994. At the time of the misconduct, the respondent had been practicing law for more than 20 years.

h.      Indifference to Making Restitution. The respondent did not have malpractice insurance at the time of his misconduct. Further, the respondent took no steps to right the wrongs he committed against W.D.

"48.      Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. Because the respondent chose to not cooperate in the disciplinary investigation and chose to not appear at the hearing on the formal complaint and present evidence on his own behalf, the hearing

15

panel has no evidence to consider in mitigation of the misconduct. Accordingly, the hearing panel, in this case, finds no mitigating circumstances present.

"49.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered Standard 4.41(b) which provides that '[d]isbarment is generally appropriate when . . . a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client.'

"*Recommendation*

"50.     Based on the significant injury to W.D. and the respondent's previous history of attorney misconduct, the disciplinary administrator recommended that the respondent be disbarred.

"51.     The respondent engaged in serious misconduct. Additionally, the significant evidence in aggravation, including the evidence that the respondent failed to cooperate in the disciplinary investigation and participate in the disciplinary hearing, compounds the respondent['s] serious misconduct. It is clear that the respondent should no longer have a license to practice law. Accordingly, based upon the findings of fact, conclusions of law, and the Standard listed above, the hearing panel unanimously recommends that the respondent be disbarred.

"52.     Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2018 Kan. S. Ct. R. 251). Clear

16

and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he failed to file an answer, and adequate notice of the hearings before the panel and this court for which he did not appear. Service on respondent was achieved through certified mail to respondent's last address on file with the Clerk of the Appellate Courts, through regular mail to respondent's home address, and through personal service by Special Investigator William C. Delaney who served a copy of the formal complaint and notice of hearing on respondent's wife at the respondent's home address on November 30, 2017. Because of inclement weather, offices in the Judicial Branch were closed on the original date of the hearing, January 11, 2018. The hearing was rescheduled for March 22, 2018, and notice was sent to respondent both by certified mail to his last address on file with the Clerk of the Appellate Courts and by regular mail to his home address. Respondent also failed to appear before the Supreme Court on October 24, 2018, after being given proper notice. The respondent did not file exceptions to the panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2018 Kan. S. Ct. R. 255).

Furthermore, the evidence before the panel establishes by clear and convincing evidence the charged misconduct violated KRPC 1.1 (2018 Kan. S. Ct. R. 289) (competence); 1.3 (2018 Kan. S. Ct. R. 292) (diligence); 1.4(a) (2018 Kan. S. Ct. R. 293) (communication); 1.5(d) (2018 Kan. S. Ct. R. 294) (fees); 3.2 (2018 Kan. S. Ct. R. 343) (expediting litigation); 4.1(a) (2018 Kan. S. Ct. R. 355) (truthfulness in statements to others); 8.4(c) (2018 Kan. S. Ct. R. 381) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); 8.4(d) (2018 Kan. S. Ct. R. 381) (engaging in conduct prejudicial to the administration of justice); 8.4(g) (2018 Kan. S. Ct. R. 381)

17

(engaging in conduct adversely reflecting on lawyer's fitness to practice law); and Kansas Supreme Court Rule 207(b) (2018 Kan. S. Ct. R. 246) (failure to cooperate in disciplinary action), and it supports the panel's conclusions of law. We adopt the panel's conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the panel hearing, the Disciplinary Administrator recommended disbarment. In its final hearing report, the panel agreed with the Disciplinary Administrator and recommended disbarment. At the hearing before this court, the Disciplinary Administrator continues to recommend disbarment. Respondent did not appear. We have previously held: "Certainly, the lack of an appearance at a hearing before this court qualifies as an additional aggravator." *In re Barker*, 302 Kan. 156, 163, 351 P.3d 1256 (2015); see Kansas Supreme Court Rule 212(d) (respondent shall appear in person in disciplinary proceedings before the Supreme Court).

Upon considering all of these factors, we agree with the recommendation of the hearing panel and of the Disciplinary Administrator.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that John M. Knox be and he is hereby disciplined by disbarment in accordance with Supreme Court Rule 203(a)(1) (2018 Kan. S. Ct. R. 234), effective on the filing of this decision.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.